**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Johnston,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>    Defendant. | No. CV 11-8121-PHX-JAT<br><br>**ORDER** |

Plaintiff Jason Johnston appeals the Commissioner of Social Security's denial of disability benefits. Doc. 13. The Court now rules on his appeal.

**I.     BACKGROUND**

**A.     Procedural Background**

On April 22, 2008, Jason Johnston ("Plaintiff") filed an application for child's disability benefits under sections 42 U.S.C. §§ 402(d) and 416(e) of the Social Security Act ("Act"), as well as supplemental security income benefits under Title XVI of the Act and 42 U.S.C. § 1381(a), alleging a disability onset date of February 27, 1990. Tr. at 103–07. The Commissioner of Social Security (the "Commissioner") denied benefits on July 2, 2008, and Plaintiff requested reconsideration. Tr. at 25. Plaintiff was again denied benefits on December 12, 2008, and he appealed. Tr. at 89. On February 21, 2010, Plaintiff amended his alleged onset date to April 22, 2008. Tr. at 115.

On April 1, 2010, Administrative Law Judge ("ALJ") Norman R. Buls held a hearing on Plaintiff's claim. Tr. at 28–55. Following the ALJ's unfavorable decision, Plaintiff appealed to the Social Security Appeals Council. Tr. at 10–27. When the Appeals Council denied Plaintiff's request for review, Plaintiff filed an appeal for supplemental security income benefits under Title XVI of the Act and 42 U.S.C. § 1381(a) with this Court. Doc. 13. Plaintiff argues that the ALJ wrongly: (1) based its step five determination on the Medical–Vocational Guidelines (the "Grids") and failed to call a vocational expert ("VE") given Plaintiff's non-exertional impairments; (2) rejected the opinions of Plaintiff's treating physician without evaluating them in accordance with the applicable regulations; (3) failed to find that Plaintiff had a severe physical impairment, failed to evaluate Plaintiff's obesity and its impact on Plaintiff's functioning, and rejected Plaintiff's credibility without providing clear and convincing reasons based on substantial evidence; and (4) failed to completely evaluate the testimony of a third party witness. Doc.13 at 15–25.

**B.     Medical Background**

The Court will briefly summarize Plaintiff's medical history, which is thoroughly recounted in the record. Plaintiff's medical records reveal the following impairments: affective disorder, borderline intellectual functioning, and attention deficit hyperactivity disorder ("ADHD"). Plaintiff has been prescribed Seroquel for insomnia (Tr. at 528) and Abilify for depression and bipolar disorder (Tr. at 240, 242, 245).

Between January 15, 2008, and November 2, 2009, Plaintiff saw his treating physician Dr. Laurie Weston for treatment of mood disorder. In March 2008, Dr. Weston granted Plaintiff seriously mentally ill (SMI) status due to his bipolar disorder, which causes frequent disruptive behavior when he is not on medication. Tr. 246–47.

Between February 19, 2008 and January 10, 2012, Plaintiff was treated at the Kingman Regional Medical Center for a variety of issues, including chest pain, abdominal tenderness, arm pain caused by possible early cellulitis, abdominal hernia repair, headache caused by a possible congenital development defect, abdominal surgical wound complaints, and back pain. Plaintiff was discharged in stable or improved condition following each visit

1  to the Kingman Regional Medical Center. Tr. 271–413.

2  After careful examination of Plaintiff's medical record, but not a physical or mental examination of Plaintiff, State agency psychologist, Dr. Stephen Fair, opined on June 30, 2008, that Plaintiff could "persevere and concentrate on simple, repetitive work over an extended period of time" although "[h]e has difficulty interacting with others as he becomes anxious around others, [especially] strangers." Tr. at 417. Thus, Dr. Fair concluded that a "work setting with limited contact with others would be preferable." *Id.*

8  Between September 2, 2008, and December 8, 2009, records from the Golden Valley Medical Center show that Plaintiff was diagnosed with hydrocephalus, although no evidence of cerebellar tonsil herniation or intracranial hemorrhage was found. Tr. at 572. Plaintiff also showed a normal fourth ventricle system size. *Id.* At this time, Plaintiff underwent a sports physical for baseball, basketball, and football. The examination was normal. Tr. at 547–50.

13  On November 2, 2008, consultative licenced psychologist, Dr. Minette Nance Doss, examined Plaintiff and noted an "odd affect" although Plaintiff demonstrated no anhedonic signs of depression. Tr. at 482. Dr. Doss also noted that Plaintiff could regularly attend school, maintain good friendships with 20 individuals, remember well visually, understand and generate auditory and visual analogies, and maintain appropriate levels of grooming and hygiene. Tr. at 483. Plaintiff's working memory was found to be good and contraindicative to his alleged ADHD. Tr. at 477. Dr. Doss reported that Plaintiff scored intellectually deficient on the Wechsler Adult Intelligence Scale - III, but believed that Plaintiff's Full-Scale IQ of 68 might be an underestimate of his ability. Tr. at 481.

22  After careful examination of the medical evidence and all other evidence in the record, State agency psychologist, Dr. David Yandell, opined on December 5, 2008, that Plaintiff could "perform simple, unskilled job tasks on a sustained, competitive basis" and "understand and remember simple tasks," notwithstanding his "moderate limitations in setting realistic goals independently." Tr. at 492. Dr. Yandell also reported that Plaintiff's intelligence testing was likely an underestimate of his actual abilities due to Plaintiff's lack of effort. *Id.*

Finally, academic records reflect Plaintiff's receipt of a high school diploma, despite having specific learning disabilities in writing, spelling, and mathematics Tr. 154–55, 157, 173, 178. Plaintiff's explosive temper and erratic behavior, as well as his tendency to injure himself and manipulate authority, were recorded in a Functional Behavior Assessment from the Kingman Unified School District. Tr. 118–20.

## II. DISABILITY

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R.

1  § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the
2  claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).
3  Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting,
4  carrying, reaching, understanding, carrying out and remembering simple instructions,
5  responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. §
6  404.1521(b). Further, the impairment must either have lasted for "a continuous period of at
7  least twelve months," be expected to last for such a period, or be expected "to result in
8  death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)).
9  The "step-two inquiry is a de minimis screening device to dispose of groundless claims."
10 *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe
11 impairment, then the claimant is not disabled.

12  3. Having found a severe impairment, the ALJ next determines whether the
13 impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. §
14 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before
15 proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual
16 functional capacity based on all the relevant medical and other evidence in [the] case record."
17 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most that he can
18 still do despite all of his impairments, including those that are not severe, and any related
19 symptoms. 20 C.F.R. § 404.1545(a)(1).

20  4. At step four, the ALJ determines whether, despite the impairments, the claimant can
21 still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this
22 determination, the ALJ compares its "residual functional capacity assessment . . . with the
23 physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §
24 404.1520(f). If the claimant can still perform the kind of work that he previously engaged in,
25 the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

26  5. At the final step, the ALJ determines whether the claimant "can make an adjustment
27 to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making
28 this determination, the ALJ considers the claimant's "residual functional capacity" and his

1 "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can 2 perform other work, he is not disabled. If the claimant cannot perform other work, he will be 3 found disabled. As previously noted, the Commissioner bears the burden of proving that the 4 claimant can perform other work that exists in the national economy. *Reddick*, 157 F.3d at 5 721.

6 In evaluating the claimant's disability under this five-step process, the ALJ must 7 consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. 8 This includes medical opinions, records, self-reported symptoms, and third-party reporting. 9 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

**C.     This Court's Standard of Review**

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**III.    THE ALJ'S EVALUATION UNDER THE FIVE-STEP PROCESS**

**A.     Legal Standard**

Under 20 C.F.R. § 404.1520(a)(4), the ALJ followed Social Security regulation for

- 6 -

evaluating disability claims and found Plaintiff to be severely impaired at steps one through four in the sequential process. At step five, the burden shifted to the Commissioner to show that Plaintiff could engage in gainful employment in the national economy. *See Reddick*, 157 F.3d at 721. The Commissioner can make this showing in one of two ways. First, a vocational expert can be called to evaluate a factual scenario and testify about "what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (internal citation omitted). Second, the Grids can be used to determine if a particular claimant is capable of performing certain kinds of work in significant numbers in the national economy. *Id*. According to the Ninth Circuit:

> The [G]rids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment. They may be used, however, only when the [G]rids accurately and completely describe the claimant's abilities and limitations. When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the [G]rids are inapplicable. In such instances, the Secretary must take the testimony of a vocational expert, and identify specific jobs within the claimant's capabilities.

*Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal quotations and citations omitted). Non-exertional limitations that are not covered by the Grids are those that limit an individual's ability to work "without directly affecting his or her strength. . . . Examples of non-exertional limitations are mental, sensory, postural, manipulative, or environmental (e.g.[,] inability to tolerate dust or fumes) limitations." *Desrosiers*, 846 F.2d at 579. However, "[i]t is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines." *Id.* at 577.

### B. Analysis

This Court is not charged with reviewing the evidence and making its own judgment

- 7 -

as to whether Plaintiff's non-exertional limitations were severe enough to require the testimony of a vocational expert. Rather, this Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Plaintiff argues that the ALJ committed reversible error in basing his step five determination on the Grids. Doc. 13 at 15. Specifically, Plaintiff contends that the Grids do not apply because of the cumulative effect of his multiple, moderate non-exertional limitations (borderline intellectual functioning, ADHD, and affective disorder), the combination of which constitutes an impairment "sufficiently severe" enough to require the testimony of a vocational expert. Doc. 13 at 18. While Plaintiff is correct that the application of the Grids is inappropriate where a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the Grids cannot be circumvented merely because Plaintiff has alleged the existence of non-exertional impairments. *See Desrosiers*, 846 F.2d at 577.

Here, the ALJ found that Plaintiff's alleged symptoms and non-exertional limitations were not corroborated by objective medical evidence in the record. Tr. at 22. Specifically, the ALJ found no evidence that Plaintiff was "severely restricted in his ability to think, remember, understand and communicate" and noted that Plaintiff "benefitted, and responded, well to therapy and treatment." *Id*. The ALJ further relied upon Plaintiff's ability to engage in substantial daily activities such as getting up, taking out the trash, washing dishes, walking, doing laundry, going to the bathroom, riding an all-terrain vehicle ("ATV"), riding a dirt bike, attending school, caring for his sister and family pets, preparing meals, cleaning, doing yard work, socializing with friends, and using a computer as further evidence that Plaintiff was "not significantly limited in his ability to engage in basic work activities as a result of mild mental retardation and ADHD." *Id*.

Based on this evidence, the ALJ determined that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings" in 20 CFR Part 404, Subpart P, Appendix 1. Tr. at 19. The ALJ concluded that Plaintiff's

1 2 3 4 5 6 7 8 9 10 11 12 13 14 "ability to perform work at all levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupation base of unskilled work at all exertional levels. A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical–Vocational Guidelines." Tr. at 23. The ALJ further concluded that the Grids were applicable because Plaintiff's non-exertional limitations were not "sufficiently severe" so as to prevent him from performing a full range of work. Having made these findings based upon careful consideration of the entire record, the ALJ was not required to take the testimony of a vocational expert and he did not do so. The Court finds that a reasonable person would accept the ALJ's reasons and relied-upon evidence as adequate to support the ALJ's conclusion that Plaintiff was not disabled, and that he could perform certain kinds of work. *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the ALJ was not required at step five to call a vocational expert to testify as to whether Plaintiff could perform work in the national economy.

### IV.   THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIAN

#### A.   Legal Standard

17 18 19 20 21 22 23 24 25 26 27 28 "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. The Ninth Circuit has held that a treating physician's opinion is usually entitled to "substantial weight." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at 631. Under the Ninth Circuit's "credit-as-true" rule, "Where the [ALJ] fails to

provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law." *Lester v Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotations omitted).

### 1. Substantial Evidence

Substantial evidence that contradicts a treating physician's opinion may consist of either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester*, 81 F.3d at 830-31.

In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

### 2. Discounting of a Treating Physician's Opinion

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(d). *Orn*, 495 F.3d at 631; SSR 96-2p at 4. These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the

1  treatment relationship; (3) the extent to which the opinion is supported by relevant medical
2  evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the
3  physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(d). On
4  the other hand, if a treating physician's opinion is not contradicted by the opinion of another
5  physician, then the ALJ may discount the treating physician's opinion only for "clear and
6  convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830).

**B.     Discussion**

Plaintiff argues that the ALJ erred in affording the opinions of treating physician Dr. Weston no controlling weight. Specifically, the ALJ found that those opinions were not well-supported by objective, independent clinical findings and they were contradicted by treatment notes from other associates at the Mohave Mental Health Center. As the ALJ noted, the record shows that Dr. Weston completed a mental impairment assessment of Plaintiff, concluding that he had significant mental functional limitations, ADHD, and bipolar mood disorder. Dr. Weston opined that Plaintiff could not perform activities "such as cleaning, cooking, bill paying, or using public transportation." Tr. at 517. Plaintiff is correct that the Social Security Administration favors treating physician opinions over those of non-treating and non-examining physicians. *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527). If a treating physician's opinion is not sufficiently supported by medical evidence and other substantial evidence in the case, however, the ALJ need not give the opinion controlling weight. *Id.* Furthermore, if the treating doctor's opinion is contradicted by another doctor, the ALJ may reject the treating doctor's opinion by giving specific and legitimate reasons for doing so. *Id.* at 632.

Here, the ALJ found that the opinions of Dr. Weston were directly contradicted by the independent clinical findings of other physicians, as well as other substantial record evidence. The ALJ noted the opinions of Dr. Doss, who examined Plaintiff, and those of Drs. Yandell and Fair, who reviewed Plaintiff's medical files. These doctors indicated that Plaintiff had good social functioning and a strong working memory. Plaintiff was found to be capable of understanding and remembering simple work tasks over an extended period of

- 11 -

1  time despite his mild mental retardation. Plaintiff was also found to be capable of completing
2  unskilled tasks on a sustained competitive basis even with his mild limitation in interacting
3  with others and his moderate limitation in setting realistic goals. Furthermore, both Dr. Fair
4  and Dr. Yandell based their evaluation on a standard agency-issued residual functional
5  capacity form, using objective medical findings and non-medical evidence to conclude that
6  Plaintiff was capable of performing gainful activity consistent with unskilled work despite
7  his moderate limitations. Tr. at 415–17, 490–92.

8  Additionally, while the length of a treatment relationship and the frequency of
9  examinations can weigh favorably towards providing deference to a treating physician's
10 opinion, here Dr. Weston only treated Plaintiff on two occasions during the relevant time
11 period. Tr. at 437–38, 527–28. The ALJ found that this limited treatment period, coupled
12 with the inconsistencies between Dr. Weston's reports and those of her associates, made Dr.
13 Weston's findings less persuasive in light of the substantial and objective medical findings
14 of Drs. Fair, Yandell, and Doss. Furthermore, an ALJ may reject the "opinion of any
15 physician, including a treating physician, if [the] opinion is brief, conclusory, and
16 inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Dr. Weston failed to
17 provide a specific explanation for the records upon which she relied in making her opinion
18 of disability.

19 This Court finds that because the ALJ provided adequate reasons for rejecting the
20 opinions of treating physician Dr. Watson, the credit-as-true rule does not apply.
21 Accordingly, the ALJ did not err in affording the opinions of Dr. Weston no controlling
22 weight.

23 **V.     PLAINTIFF'S REPORTED SYMPTOMS**
24     **A.     Legal Standard**
25 An ALJ must engage in a two-step analysis to determine whether a claimant's
26 testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d
27 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has
28 presented objective medical evidence of an underlying impairment 'which could reasonably

be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce him pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96-7p at 2; *Carmickle*, 533 F.3d at 1160-61 ("reasonable inference, not a medically proven phenomenon").

Once a claimant has shown that he suffers from an underlying medical impairment that could reasonably be expected to produce him pain or other symptoms, the ALJ then must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider the objective medical evidence; the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; medication taken; treatments for relief of pain or other symptoms; and other factors. 20 C.F.R. § 404.1529(c); SSR 96-7p at 3. Notably, "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits" *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

At this second evaluative step, the ALJ may reject a claimant's testimony regarding the severity of his symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for finding that a clamant is not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036).

**B.     Discussion**

In this case, Plaintiff alleges disability due to bipolar disorder, auditory disability, heart palpitations, high blood pressure, back pain, and knee pain. Tr. at 13, 33, 103-07, 127.

Under *Lingenfelter*, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. at 21. The ALJ found, however, that Plaintiff failed to satisfy the second evaluative step of the *Lingenfelter* test, concluding that "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Plaintiff's] residual functional capacity assessment." *Id*. The ALJ found that there was objective evidence in the medical record showing that Plaintiff had been evaluated and successfully treated for bipolar disorder and other mood disorders, and that there was no evidence of his diagnosis with an auditory disability. The ALJ similarly found Plaintiff's knee pain, back pain, and other resolved or treatable physical impairments to be non-severe. Tr. at 18. Finally, the ALJ found no evidence that Plaintiff's Global Assessment of Functioning (GAF) score of 60–65 (which is indicative of moderate to mild symptoms), mild mental retardation, or ADHD significantly restricted his ability to perform ordinary daily activities or to engage in substantial gainful activity. *Id*. Specifically, the ALJ relied on written statements and oral testimony indicating that Plaintiff was able to perform various household tasks and social interactions consistent with a significant degree of overall physical and mental functioning. For example, Plaintiff himself indicated that his condition did not affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, or use his hands. Tr. 140.

The main finding by the ALJ that relates to credibility is that Plaintiff's recounted daily activities are not consistent with his alleged disability. While Plaintiff argues that the ALJ erred in finding that his daily activities undermine his credibility, there is substantial evidence in the record and cited in the ALJ's opinion that Plaintiff takes out the trash, washes dishes, does laundry, goes to the bathroom, rides an ATV and dirt bike, attends school, and performs other substantial activities such as bathing and grooming, taking care of his sister and his pets, preparing simple meals, washing dishes, doing work in the yard, spending "a lot" of time outdoors with friends, and using a computer. Tr. at 20–22. As the Commissioner notably argues, the ALJ found that Plaintiff's alleged symptoms and limitations were not corroborated by objective medical evidence in the record, nor were they consistent with a

1 third-party statement from Plaintiff's grandmother, which reports Plaintiff's ability to engage in a variety of significant daily activities. Consequently, the ALJ rejected Plaintiff's subjective testimony regarding the severity of his symptoms based on specific, clear and convincing evidence and found that Plaintiff was not credible. *See Lingenfelter*, 504 F.3d at 1036.

Plaintiff further argues that the ALJ erred in interpreting and failing to consider evidence related to Plaintiff's obesity. Doc. 17 at 3. Here, the ALJ cited Plaintiff's medical records, which report that Plaintiff is 5'5" tall, weighs 235 pounds, and has a corresponding Body Mass Index of 39.1. Tr. at 18. The ALJ noted that while Plaintiff's "extreme" obesity represents a high risk for developing obesity-related impairments, this heightened risk "does not correlate to any specific degree of functional loss." *Id.* Furthermore, the ALJ considered Plaintiff's obesity to be non-severe because he failed to "allege[] impairment from his obesity." *Id.*

Moreover, "An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). This is true "even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Id*. This Court therefore finds that the ALJ provided clear and convincing reasons for finding Plaintiff's self-reported symptoms not to be credible, and that this finding was based on "careful consideration of the entire record." Tr. at 15. Accordingly, it was not unreasonable for the ALJ to conclude that Plaintiff's pain did not prevent him from working given his ability to perform "household chores and other activities that involve many of the same physical tasks as a particular type of job. . . ." *Id*. Thus, it was not erroneous for the ALJ to deny Plaintiff disability benefits on this basis.

**VI.   LAY WITNESS TESTIMONY**

    **A.   Legal Standard**

In determining whether a claimant is disabled, an ALJ must consider lay witness

- 15 -

testimony regarding the claimant's inability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)); *see also* 20 C.F.R. § 404.1513(d). An ALJ cannot disregard lay witness testimony without comment, *Bruce*, 557 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so only upon providing specific reasons that are "germane to each witness." *Id.* (quoting *Nyugen*, 100 F.3d at 1467); *Stout*, 454 F.3d at 1054. When an ALJ errs in failing "to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### B. Discussion

In this case, the ALJ failed to properly discuss lay witness testimony completed by Plaintiff's grandmother in May 2008. Tr. 127–34. The ALJ cited to this testimony in his opinion, but only cited to those portions which were favorable to a finding of non-disability. Tr. at 21. The ALJ specifically failed to discuss the grandmother's testimony that Plaintiff's disability affects his memory and ability to complete tasks, concentrate after 30 minutes to one hour, understand and follow instructions, and get along with others. Tr. at 148. The ALJ then disregarded this testimony to the extent that he found it inconsistent with Plaintiff's residual functional capacity assessment but did not comment on his reasons for doing so. This was legal error. *See Bruce*, 557 F.3d at 1115 (lay testimony "is competent evidence and 'cannot be disregarded without comment'") (citing *Nguyen*, 100 F.3d at 1467).

However, the Court concludes that no reasonable ALJ, even if fully crediting this testimony, could have reached a different disability determination. The limitations and disabilities contained in Plaintiff's grandmother's report are very similar to, and consistent with, those which Plaintiff described in his testimony. Tr. at 135–42. As a result, this Court concludes that the ALJ's decision to discredit Plaintiff's testimony was supported by substantial evidence, and because Plaintiff's grandmother's testimony was consistent with Plaintiff's testimony, it would be reasonable for an ALJ to disregard Plaintiff's

1 grandmother's testimony as well. Therefore, the ALJ's error in disregarding Plaintiff's
2 grandmother's testimony was harmless.

### VII.  CONCLUSION

The Court finds that the ALJ did not err in relying on the Grids or in denying controlling weight to, and ultimately rejecting, the opinions of Plaintiff's treating physician. The Court finds that the ALJ also gave clear and convincing reasons, based upon substantial evidence in the record, for finding Plaintiff's subjective symptom testimony to not be credible. In light of the ALJ's reasonable interpretation, it is not this Court's "role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 604). Finally, the Court finds that the ALJ erred in failing to provide specific reasons for disregarding some of the testimony given by Plaintiff's grandmother, but such error was harmless because her testimony, if credited, could not have lead a reasonable ALJ to a finding of disability.

Accordingly,

**IT IS ORDERED** affirming the Commissioner's denial of benefits.

DATED this 31st day of July, 2012.

James A. Teilborg
United States District Judge